

**FILED**

APR 7 2009 *aw*
Apr 7. 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MOTION UNDER 28 U.S.C. SECTION 2255
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

---

MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY
A PERSON IN FEDERAL CUSTODY

---

UNITED STATES )
)
)
)
)
09cv1347
)
) CASE NO. 09-C-1347
v. ) (To be supplied by clerk)
)
)
)
STEVE LISCANO # 14996-424 )
(Full name and prison number of )
movant) )

**IF THE MOVANT HAS A SENTENCE TO BE SERVED IN THE <u>FUTURE</u> UNDER
A FEDERAL JUDGMENT WHICH HE WISHES TO ATTACK, HE SHOULD FILE
A MOTION IN THE FEDERAL COURT WHICH ENTERED THE JUDGMENT.**

1. Place of detention, or if on parole, date of parole release

 U.S. Penitentiary Terre Haute, Indiana _____.

2. Name and location of court which sentence was imposed and name
 of judge who imposed the sentence which is now under attack.

 United States District Court, Northern District of Illinois,

 Honorable James F. Holderman, Judge.

1

3. Date of judgment of conviction:
   **November 29, 2005**

4. Case number: **02-CR-719**

5. Length of sentence: **Life**

6. Nature of offense involved (all counts): **Conspiracy to possess with intent to distribute and to distribute in excess of 5 kilograms of cocaine in violation of 21 USC §§ 841(a)(1) and 846. Count One.**

7. What was your plea?               (check one)

   (A)   Not guilty                  ( x )
   (B)   Guilty                      (   )
   (C)   Nolo Contendere             (   )

8. Kind of trial:                    (check one)

   (A)   Jury                        ( x )
   (B)   Judge only                  (   )

9. Did you testify at the trial?

   Yes  (   )                    No   ( x )

10. Did you appeal from the judgment of conviction?

    Yes  ( x )                   No   (   )

11. If you did appeal, answer the following:

    (A)   Name of court **U.S. Court of Appeals 7th Cir.**

    (B)   Result **Conviction/sentence affirmed**

    (C)   Date of result **July 16, 2007**

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?

    Yes  ( x )                   No   (   )

2

13. If your answer to (12) was **"YES,"** give the following information:

(A) (1) Name of court U.S. Supreme Court

    (2) Nature of proceeding Writ of Certiorari

    (3) Grounds Raised Same as those raised in the Court of

          Appeals

    (4) Did you receive an evidentiary hearing on your petition, application or motion?

          Yes ( )        No ( x )

    (5) Result Denied February 25, 2008

    (6) Date of result See (5) supra

(B) As to any second petition, application or motion, give the same information:

    (1) Name of the court

    (2) Nature of proceeding

    (3) Grounds Raised

    (4) Did you receive an evidentiary hearing on your petition, application or motion?

          Yes ( )        No ( )

    (5) Result

    (6) Date of result

(C) As to any third petition, application or motion, give the same information:

    (1) Name of the court

    (2) Nature of proceeding

    (3) Grounds Raised

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ( )             No ( )

(5) Result_____

(6) Date of result_____

(D) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion? N/A

(1) First petition, etc.    Yes ( )    No ( )

(2) Second petition, etc.   Yes ( )    No ( )

(3) Third petition, etc.    Yes ( )    No ( )

(E) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

N/A_____

_____

_____

_____

_____

_____

_____

14. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

**CAUTION:  IF YOU FAIL TO SET FORTH ALL GROUNDS IN THIS MOTION, YOU MAY BE BARRED FROM PRESENTING ADDITIONAL GROUNDS AT A LATER DATE.**

A. Ground one Trial Counsel was ineffective for failing to argue that the prior convictions utilized to support the 21 USC § 851 enhancement were obtained in violation of the U.S. Constitution, and, therefore, invalid.

4

Supporting FACTS (tell your story <u>briefly</u> without citing cases or law:

      See attached memorandum in support

B.   Ground two Appellate counsel was ineffective for failing to raise issue related to prior convictions being invalid.

Supporting FACTS (tell your story <u>briefly</u> without citing cases

or law):

      See attached memorandum in support

C.   Ground three Trial and Appellate counsels were ineffective

based on conflicts of interest that existed by the dual

representation of co-defendants.
Supporting FACTS (tell your story <u>briefly</u> without citing cases
or law):
      See attached memorandum in support

D.  Ground four___ The district court failed to conduct a required
    hearing under Fed.R.Crim.P. 44(c), and movant was prejudiced
    thereby.
    Supporting FACTS (tell your story briefly without citing cases
    or law:
    _____See attached memorandum in support_____

    _____

    _____

    _____

    _____

    _____

15. If any of the grounds listed in 14 A, B, C, and D were not
    previously presented, state briefly what grounds were not so
    presented, and give your reasons for not presenting them:
    The aforementioned and issues presented in the attached

    contiunation pages were not previously presented because

    they were not proper except for presentation in a collateral

    attack pursuant to 28 USC § 2255

16. Do you have any petition or appeal now pending in any court as
    to the judgment under attack?      Yes (   )      No (x  )

    (A)  If "YES," state the name of the court and the nature of
         the proceeding:_____

    _____

    _____

17. Give the name and address, if known, of each attorney who
    represented you in the following stages of the judgment
    attacked herein:

    (A)  At preliminary hearing_Same as (C) infra._____

    _____

    (B)  At arraignment and plea_Same as (C) infra._____

    _____

GROUND FIVE:   Trial counsel was ineffective for refusing
to cross examine Juan Corral during trial with specific questions
which would have undermined the government's case against Petitioner;
had trial counsel cross-examined Mr. Corral with the specific
questions there exists a reasonable probability, sufficient to
undermine confidence in the outcome of the trial that the jury
verdict would have been differnt had trial counsel's representation
been sufficient.

   Supporting FACTS:
   See attached memorandum in support

   GROUND SIX: The district court forced Petitioner to acquiesce
ot the predicate state offenses which were utilized to support
the sentencing enhancement applied to Petitioner under 21 USC
§ 851.

   Supporting FACTS:
   See attached memorandum in support

   GROUND SEVEN: Counsel was ineffective for his failure to
properly cross-examine witnesses regarding the conspiracy as
it related to gang conspiracy that was not legally alleged in
the indictment.

   Supporting FACTS: See attached memorandum in support

   GROUND EIGHT: Counsel was ineffective for failing to utilize
Juan Corral's testimony during trial that he was self-employed
and that movant didn't work for him.

   Supporting FACTS: See attached memorandum in support

   GROUND NINE: Counsel was ineffective for failing to argue
that movant's sentence was unreasonable and excessive and/or
that movant's assessed Criminal History calculation (851) overrepre-
sented his actual Criminal History.

   GROUND TEN:

        Counsel was ineffective for failing to empeach Juan Corral's
testimony.

   Supporting FACTS: See attached memorandum

   GROUND ELEVEN:Counsel was ineffective for failing to argue that
the government's theory of movant's participationin the charged
conspiracy was flawed.

   Supporting FACTS: See attached memorandum

   GROUND TWELVE: Counsel was ineffective for failing to move for
discovery of the Kane County Jail phones related to Juan Corral which
could have been used to impeach Mr. Corral's testimony.

Supporting FACTS: See attached memorandum in support

GROUND THIRTEEN: Culmulative errors of counsel deprived movant of a fair trial.

Supporting FACTS: See attached memorandum in support

(C) At trial Robert A. Loeb, Esq. 221 N. LaSalle St., Ste 1938

Chicago, Illinois 60601

(D) At sentencing Same as (c) supra.

(E) On appeal William E. Marsh, Esq. & William H. Dazey, Jr.

Esq. 111 Monument Circle, Ste. 752 Indianapolis, IN 46204

(F) In any post-conviction proceeding N/A

(G) On appeal from any adverse ruling in a post-conviction
    proceeding

18. Were you sentenced on more than one count of an indictment, or
    more than one indictment, in the same court and at
    approximately the same time?      Yes (   )     No ( x )

19. Do you have any future sentence to serve after you complete
    the sentence imposed by the judgment under attack?
                                       Yes (   )     No ( x )

    (A) If so, give the name and location of the court which
        imposed the sentence to be served in the future:

    (B) And give the date and length of sentence to be served in
        the future:

7

WHEREFORE, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____

Signature of attorney (if any)

Signature of Movant

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _4-2-09_____
(date)

_____

Signature of Movant

8/24/01

C:\work_dif\2253-FRM.WPD

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVE LISCANO,                      )
    Movant,                        )
                                    )
                                    )
                                    )
v.                                  )
                                    )
                                    )
UNITED STATES OF AMERICA,           )
    Respondent.                    )

## MOTION TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE PURSUANT TO 28 U.S.C. §2255

Movant STEVE LISCANO (hereinafter "movant") submits his
petition under 28 U.S.C. § 2255, instanter. Movant has filed
his petition within the one-year of the date on which the judgment
of conviction became final. See Clay v. United States, ___ U.S.
___, 123 S. Ct. 1072, 1075 (2003)(holding that "[f]or the purpose
of starting the clock on § 2255's one-year limitation period ...
a judgment of conviction becomes final when the Time expires for
filing a petition for certiorari contesting the appellate court's
affirmation of the conviction ... 90 day's after entry of the
Court of Appeals' judgment").

The deadline for movant to file his petition under § 2255
is  March 01         , 2009.  This District Court therefore has
jurisdiction over the instant petition pursuant to 28 U.S.C. §
2255.

## STATEMENT OF THE CASE

Movant Steve Liscano was charged, along with others, with conspiracy to possess with intent to distribute and to distribute in excess of 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 in count one of an indictment filed November 20, 2002. Estremera (in count eleven) was also charged with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The government, on May 19, 2003, filed its notice of intent to offer evidence pursuant to Federal Rule of Evidence 404(b) at trial concerning conversations Estremera had regarding marijuana.

A joint jury trial conducted June 5 - 17, 2003 resulted in guilty verdicts on each charged count on June 17, 2003.

At the close of the government's case, each defendant moved for judgment of acquittal challenging the sufficiency of the evidence, which the district court denied.

In a bifurcated proceeding, the jury returned verdict forms finding as to each defendant that the conspiracy charged in Count one involved in excess of five kilograms of cocaine.

Sentencing hearings in Movant's and Estremer's cases were delayed significantly following Pena's sentencing pending resolution of United States v. Booker, 543 U.S. 220 (2005).

On May 21, 2003, a complaint alleging three prior felony drug convictions had been filed against Movant pursuant to 21 U.S.C. § 851. The district court found the existence of two convictions to require a mandatory sentence of life in prison and imposed such a sentence by judgment of conviction dated November 29, 2005.

Movant on December 9, 2005, filed a timely notice of appeal.

By order dated the Court of Appeals dated January 5, 2006, the appeals of movant and co-defendant Estremera were consolidated.

On July 16, 2007, the Court of Appeals for the Seventh Circuit affirmed this Court's judgment as to movant. <u>See</u>, 493 F.3d 879 (7th Cir. 2007), and on August 27, 2007, a petition for rehearing and suggestion for rehearing en banc was denied.

On February 25, 2008, movant's petition for writ of certiorari to the United States Court of Appeals for the Seventh Circuit was denied by the Supreme Court. <u>See</u>, 170 L. Ed. 2d 287, ___ U.S. ___, Liscano v. United States.

## STATEMENT REGARDING THE ANTI-EFFECTIVE DEATH PENALTY ACT

In an effort to meet the filing statutory deadline one-year limit imposed by the Anti-effective Death Penalty Act of 1996, movant is filing the instant petition and shall make factual and supporting caselaw amendments hereto on or before April 25, 2009. Generally, Courts allow a movant in a section 2255 proceeding to make amendments and/or supplements to a timely filed § 2255 motion pursuant to Rule 15 of the Federal Rules of Civil Procedures, even if the amendment/supplement is filed after the one-year dead-line. <u>See</u>, e.g., United States v. Thomas, 221 F.3d 430, 438 (3d Cir. 2000); United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000); United States v. Espinosa-saenz, 235 F.3d 501, 504-05 (10th Cir. 2001).

## PRINCIPLES OF SECTION 2255

As stated supra, a detailed memorandum shall be filed in support of the instant petition on or before April 25, 2009.

Movant now raises claims that he shall characterize as claims of ineffective assistance of counel. To establish ineffective assistance of counsel, movant must show that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984).

In the instant § 2255 petition, movant asks this Court to vacate his conviction and sentence because his attorney was constitutionally ineffective in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.

Relief under § 2255 is available for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice. Kelly v. United States, 29 F.3d 1107, 1112 (7th Cir. 1994)(quotations omitted).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the assistance of counsel for his defense." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). A party claiming ineffective assistance of counsel bears the burden of showing prongs outlined above and cited from the controlling case of Strickland v. Washington.

To satisfy those prongs, movant must direct the Court's attention to specific acts or omissions of his counsel. Fountain v. United States, 211 F.3d 429, 434 (7th Cir. 2000)(citing United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995). The Court must then consider whether in light of all the circumstances counsel's unprofessional errors, the result of the proceedings would have been different. Fountain, 211 F.3d at 434; Adams v. Bertrand, 453 F.3d 428, 435 (7th Cir. 2006). A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome. Adams, 453 F.3d at 435 (citing Strickland, 466 U.S. at 694).

With these principles in mind, movant advances the following claims:

**GROUND ONE: Trial Counsel was ineffective for failing to argue that the prior convictions utilized to support the 21 U.S.C. § 851 sentencing enhancement were obtained in violation of the United States Constitution and therefore, invalid.**

21 U.S.C. § 841(b)(1)(A) - (D) provide for enhanced statutory penalties if the defendant commits a violation of the statute "after a prior conviction for a felony drug offense becomes final." United States v. Damerville, 27 F.3d 254, 258 (7th Cir. 1994).

Before trial, or before entry of a plea of guilty the United States Attorney must file an information (and serve it on the defendant or his counsel) "stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). United States v. Spence, 450 F.3d 691, 695 (7th Cir. 2006).

The district court must then ask the defendant whether he

admits or denies the prior convictions. See 21 U.S.C. § 851(b).
United States v. Williams, 298 F.3d 688, 693 (7th Cir. 2002).

A defendant has the right to attack enhancement under this
provision on the ground that the prior conviction relied upon
was obtained in violation of the United States Constitution or
otherwise invalid. See 21 U.S.C. § 851(c)(1) and (2). The defendant
must prove the invalidity of the prior conviction by a preponderance
of the evidence. See 21 U.S.C. § 851(c)(2). United States v.
Feliciano, 498 F.3d 661, 664 (7th Cir. 2007).

Trial counsel had an opportunity prior to sentencing to deny
that the convictions relied upon by the government to enhance
movant's sentence were invalid constitutionally and therefore
could not be utilized for such an enhancement, but failed to do
so.

Specifically, movant informed trial counsel that the state
conviction the government was relying upon, see Exhibit A hereto,
were presumptively void based on the fact that the convictions
were obtained in violation of the sixth amendment to the United
States Constitution.

Courts have carved out an allowance permitting a collateral
attack on a prior conviction that is presumptively void--that
is where as here in the instant case, a conviction lacking constitu-
tionally guaranteed procedures plainly detectable from a facial
examination of the record. See United States v. Mitchell, 18
F.3d 1355, 1360-61 (7th Cir.), cert. denied, 130 L. Ed. 2d 546,
115 S. Ct. 640 (1994).

Movant informed trial counsel that the conviction for posses-

sion of a Controlled Substance in Kane County Circuit Court which took place on or about June 8, 95 June 8, 2000 , was obtained in violation of the Sixth Amendment to the United States Constitution because the plea of guilty that was entered in the case was entered without the assistance of counsel and this is supported by the fact that a facial examination of the record, the presentence Investigation Report at Page 10, lines 192-285 does not disclose that movant was represented by counsel during the proceeding at issue. See B hereto. If a prior conviction was obtained from a defendant who lacked representation of counsel as guaranteed by Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963), that prior conviction may not be used to enhance a sentence for subsequent offense.

The plea that was entered in the state charge that was used to enhance movant's federal charge for sentencing purposes i.e., the state conviction that occurred on June 8, 95 June 8, 2000 , was unknowing and unintelligently made. A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. See Kercheval v. United States, 274 U.S. 220, 223, 71 L. Ed. 1009, 1012, 47 S. Ct. 582. Admissibility of a confession must be based on a "reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant." Jackson v. Denno, 378 U.S. 368, 387, 12 L. Ed. 2d 908, 922, 84 S. Ct. 1774, 1 ALR 3d 1205. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In Carnley v. Cochran, 369 U.S. 506,

516, 8 L. Ed. 2d 70, 77, 82 S. Ct. 884, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is no waiver.

The same standard must be applied to determining whether a guilty plea is voluntarily made. See 395 U.S. at 243. A plea of guilty is more than an admission of conduct; it is a conviction.

If a prior conviction was obtained from a defendant who lacked representation of counsel as guaranteed by Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963), that prior conviction may not be used to enhance a sentence for subsequent offense.

The plea that was entered in the state charge that was used to enhance movant's federal charge for sentencing purposes i.e., the state conviction that occurred on July 31, 1995, was unknowing and unintelligently made. A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. See Kercheval v. United States, 274 U.S. 220, 223, 71 L. Ed. 1009, 1012, 47 S. Ct. 582. Admissibility of a confession must be based on a "reliable determination on the voluntariness issues which satisfies the constitutional rights of the defendant." Jackson v. Denno, 378 U.S. 368, 387, 12 L. Ed. 2d 908, 922, 84 S. Ct. 1774, 1 ALR. 3d 1205. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no

constitutional innovation. In Carney v. Cochran, 369 U.S. 506,
516, 8 L. Ed. 2d 70, 77, 82 S. Ct. 884, we dealt with a problem
of waiver of the right to counsel, a Sixth Amendment right. Pre-
suming waiver from silent record is impermissible. The record
must show, or there must be an allegation and evidence which shows,
that an accused was offered counsel but intelligently and under-
standingly rejected the offer. Anything less is no waiver.

The same standard must be applied to determining whether
ignorance, incomprehension, coercion, terror, inducements, subtle
or blatant threats might be a perfect cover-up of unconstitutiona-
lity. The question of an effective waiver of a federal constitution-
al right in a proceeding is of course governed by federal standards.
Douglas v. Alabama, 380 U.S. 415, 422, 13 L. Ed. 2d 934, 938,
85 S. Ct. 1074.

Several federal constitutional rights are involved in a waiver
that takes place when a plea of guilty is entered in a state criminal
trial. First, is the privilege against compulsory self-incrimination
guaranteed by the Fifth Amendment and applicable to the States
by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 12 L.
Ed. 2d 653, 84 S. Ct. 1489. Second, is the right to trial by
jury. Ducan v. Louisiana, 391 U.S. 145, 20 L. Ed. 2d 491, 88 S.
Ct. 1444. Third, is the right to confront one's accusers. Pointer
v. Texas, 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065. Courts
cannot presume a waiver of these important federal rights from
a silent record, a silent record which is present in the case
at bar. What is at stake in this case demands the utmost solicitude
of which courts are capable in canvassing the matter with the

accused to make sure he has a full understanding of what the plea
connotes and of its consequences, and that simply did not occur
in the state Court in this matter, the state Court failed to dis-
charge a function and leave an adequate record for any review,
in particular, a review by this federal Court prior to determining
that the underlying conviction qualified for enhancement purposes,
and because it didn't and the record was silent on the matter
and because movant himself informed trial counsel of these circums-
tances, trial counsel had a professional obligation to argue that
the prior convictions utilized to support the 21 U.S.C. § 851
sentencing enhancement were obtained in violation of the United
States Constitution and therefore invalid, and failed to do so
rendered counsel's performance ineffective.

In support of movant's claim that because the record was
silent as to his guaranteed Six Amendment Constitutional right
to counsel, movant advances the following supporting case law:
Burgett v. Texas, 389 U.S. 109 (1967)(the Court held that it viola-
ted the defendant's Sixth Amendment right to counsel to consider
the invalid prior conviction to support his guilt or enhance his
punishment); United States v. Tucker, 404 U.S. 443 (1972)(the
Supreme Court held that the defendant's sentence could not stand
because it was "founded at least in part upon misinformation of
constitutional magnitude"); United States v. Johnson, 612 F.2d
305 (7th Cir. 1980)(the Seventh Circuit found that the defendant's
prior conviction was invalid because the guilty plea was infirm).

Further, a federal prisoner is entitled to resentencing if
the district court relies on prior unconstitutional state convictions

to enhance a federal sentence. See United States v. Tucker, 404
U.S. 443 (1972); also see Zabel v. United States Attorney, 829
F.2d 15, 17 (8th Cir. 1987), moreover, this claim is cognizable
under 28 U.S. §[2255], see Lowery v. Young, 887 F.2d 1309 (7th
Cir. 1989).

As to the two-prongs of Strickland v. Washington being met
on this claim, movant demonstrates that the errors alleged supra
by trial counsel were so egregious that he was not functioning
as counsel guaranteed by the Sixth Amendment and that deficient
performance prejudiced movant because had the relied upon convic-
tion been deemed invalid, movant would not had been mandatorily
subjected to an enhanced sentence of life.

Hence, a showing has been made that the results of the trial
are unreliable and that counsel's errors were so serious that
they denied movant of a fair trial and movant has made the showing
necessary to establish that the conviction and sentence resulted
from a break-down in the adversarial process, rendering the result
unreliable. Strickland, 466 U.S. at 687.

**GROUND TWO: Appellate Counsel was ineffective for failing
to raise issue related to prior convictions being invalid.**

The argument set forth supra at GROUND ONE supra is hereby
incorporated by reference as though fully set forth here.

Further, movant submits that there is no question that the
due process clause gives convicted defendants the right to be
sentenced on the basis of accurate information. See Blake v. United
States, 841 F.2d 203, 206 (7th Cir. 1988); United States v. Rone,
743 F.2d 1169, 1171 (7th Cir. 1984). If a convicted defendant

can show that the information before the sentencing court was incorrect in imposing an enhanced sentence, the sentence will be vacated. Rone, 743 F.2d at 1171; United States v. Harris, 558 F.2d 366 (7th Cir. 1977).

The Seventh Circuit has held however, that a district court cannot reach the merits of an appealable issue in a section 2255 proceeding unless that issue has been raised in a procedurally appropriate manner. Williams v. United States, 805 F.2d 1301 (7th Cir. 1986), cert. denied, 481 U.S. 1039, 107 S. Ct. 1978 (1987). A petition under section 2255 "will not be allowed to do service for an appeal." Johnson v. United States, 838 F.2d 201, 202 (7th Cir. 1988)(citations omitted). A failure to raise constitutional challenges to a conviction on direct appeal bars a petitioner from raising the same issue in a section 2255 proceeding --absent **a showing of good cause for and prejudice from the failure to appeal.** Norris v. United States, 687 F.2d 899, 903-904 (7th Cir. 1982); see also United States v. Kovic, 830 F.2d 680, 684 (7th Cir. 1987).

Both aspects, cause and prejudice, must be satisfied to enable this movant to avoid the waiver caused by the failure to raise the instant issue in his direct appeal. United States v. Griffin, 765 F.2d 677, 682 (7th Cir. 1985). That is, movant must show both (1) good cause for his failure to pursue the instant issue on direct appeal, and (20 actual prejudice stemming from the alleged constitutional violation.

To establish good cause, movant avers that his appellate counsel unprofessionally refused to include this particular issue

on direct appeal notwithstanding the fact that the issue was fully
preserved and that the issue had arguable merit.

The performance of movant's appellate counsel in this regard
was objectively unreasonable.

To establish prejudice, movant submits that he was prejudiced
because appellate counsel failed to raise a meritorious and legally
preserved issue, without cause to do so.

**GROUND THREE: TRIAL AND APPELLATE COUNSELS WERE INEFFECTIVE
BASED ON CONFLICTS OF INTEREST THAT EXISTED BY THE DUAL REPRESENTATION
OF CO-DEFENDANTS.**

Claims of ineffective assistance of counsel due to attorney
conflict of interest in a general sense are governed by the familiar
two-part standard of Strickland, supra. Under that standard,
the defendant must show first that his counsel's performance fell
below the level of expected of a reasonably competent attorney.
Strickland, 466 U.S. at 687. Second, in the usual case, the defen-
dant must establish prejudice by showing "a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." 466 U.S. at 694.

However, the court's have developed a slightly different
analysis where a defendant bases a claim of ineffective assistance
on an allegation tht the attorney in question was laboring under
an actual conflict of interest. The performance element of the
Strickland analysis is satisfied when the defendant establishes
that his counsel was involved in an actual conflict of interest,
as "the effective performance of counsel requires meaningful compli-
ance with the duty of loyalty and the duty to avoid conflicts

of interest, and a breach of these basic duties can lead to ineffec-
tive assistance and representation." United States v. Tatum, 943
F.2d 370, 375 (4th Cir. 1991); see also Strickland, 466 U.S. at
692.  As for the prejudice requirement, "when counsel for a defen-
dant in a criminal case has an actual conflict of interest when
representing the defendant and the conflict adversely affects
counsel's performance in the defense of the defendant, prejudice
to the defense is presumed," thus entitling the defendant to a
new trial or sentencing. Tatum, 943 F.2d at 375; see also Strickland,
466 U.S. 335, 348-50.  And it has been said that such an actual
conflict of interest may never be harmless error. See Glasser
v. United States, 315 U.S. 60, 76 (1942).

Under the foregoing analysis, then this Court must determine
1) whether movant's attorney faced an actual conflict of interest
during trial, sentencing and the appellate proceedings, and 2)
if so, whether that conflict resulted in an adverse effect on
counsel's performance in advancing movant's position.  These are
fact-based inquires that may be intertwined; thus the same facts
regarding the representation in question may supply the answer
to both questions. See Tatum, 943 F.2d at 375.

First, the following facts reveal that counsel(s) were under
an actual conflict of interest during the trial proceedings.
Trial counsels  Lowe and                    , filed joint motions
and briefs related to the § 851 sentencing enhancements as to
both movant and codefendant Abraham Estremera, i.e., Docket Nos.
                        , and joint motions related to various
sentencing relief based upon Blakely v. Washington. See Docket

Nos.

Each defendant's criminal history with regard to the § 851 enhancement was drastically different and the facts leading to each predicate offense being utilized to make those enhancements were different, yet counsels for the defendants lumped all the arguments made together as if the arguments were being made for a single defendant verses the unique individuality of each of these defendants.

Likewise, the arguments made in the joint motion(s) related to Blakely v. Washington, which argued matters related to an individual defendant's drug amount and that "because the jury made no finding of any amount of drugs reasonable foreseeable to [movant] or...Estremera individually...," raises a conflict of interest which adversely affected counsel(s) performance in representing movant. "When the attorney [as here] is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists where as here, it can be shown that he took action on behalf of one. The effect of his action of necessity will adversely affect the appropriate defense of the another." Tatum, 943 F.2d at 376. Here counsel and co-counsel, advanced legal arguments that benefited one co-defendant and/or prejudiced that co-defendant because the background of the other co-defendant reflected negatively on the other and in some instances even benefited the position of one defendant to the detriment of the other.

Therefore, movant's right under the Sixth Amendment to the United States Constitution to conflict-free representation has been violated.

**GROUND FOUR:   The district court failed to conduct a required hearing under Fed.R.Crim.P. 44(c), and movant was prejudiced thereby.**

### Joint Representation

Movant argues that he was prejudiced by the district court's failure to conduct a hearing under Rule 44(c) after discovering that movant was being jointly represented in various pretrial and trial as well as sentencing motions filed by his appointed counsel.

This prejudice arose because the jointly filed various motions often if not each time negatively reflected against movant to the advantage of the jointly represented co-defendant Mr. Estremera.

The Sixth Amendment entitles a defendant in a criminal case to the effective assistance of competent counsel. Powell v. Alabama, 287 U.S. 45, 77 L. Ed. 2d 158, 53 S. Ct. 55 (1932).  Although multiple representation is not a per se violation of the Sixth Amendment, Holloway v. Arkansas, 435 U.S. 475, 482 (1978) it's very nature creates a great potential for conflicts of interest.  "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." Cuyler v. Sullivan, 446 U.S. at 346.

Fed.R.Crim.P. 44(c) is designed to protect a defendant's Sixth Amendment right to counsel when two or more defendants are represented by the same counsel.  This rule requires that:

> the court shall promptly inquire with respect to
> such joint representation and shall personally
> advise each defendant of his right to the effective
> assistance of counsel, including separate represen-
> tations.  Unless it appears that there is good
> cause to believe no conflict of interest is likely

> to arise, the court shall take such measures as
> may be appropriate to protect each defendant's
> right to counsel.

Fed. R. Crim. P. 44(c).

A defendant may waive his right to conflict-free representation. Holloway v. Arkansas, 435 U.S. 475, 483 n.5, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978) provided that the waiver is knowing, intelligent, and voluntary. Brady v. United States, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970) waiver of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"). Rule 44 and its notes discuss the type of waiver which the district court should secure. The court must personally address each defendant and inform him of the potential hazards of representation by a single attorney, as well as his right to seperate representation. In turn, the defendants are free to ask the court questions about the nature and consequences of the representation:

> Most significantly, the court should seek to elicit a narrative
> response from each defendant that he has been advised of
> his right to effective representation, that he understands
> the detail of his attorney's possible conflict of interest
> and the potential perils of such a conflict, that he has
> discussed the matter with his attorney or if he wishes outside
> counsel, and that he voluntarily waives his sixth amendment
> protections.

Fed.R.Crim.P. 44(c) Advisory Committee Note.

Here in the instant case, the trial court failed to discuss

the possibility of conflict with the defendants as required
by R. 44(c).

Further, neither defendant executed a waiver, stating that
they had "carefully considered" the possibility of conflicts
of interest in joint representation.

Movant was not aware of the particular nature of any conflicts
of interest which may have come into sharp focus during trial.
United States v. Agosto, 675 F.2d 965, 976 (8th Cir. 1982),
cert denied, 459 U.S. 834, 74 L. Ed. 2d 74, 103 S. Ct. 77
(1982)("it is impossible to describe in full detail the con-
flicts which may arise during the trial").

Accordingly, the trial court failed to comply with Fed.R.Crim.P.
44(c).

**GROUND FIVE:  Trial counsel was ineffective for refusing
to cross-examine <u>Juan Corral</u> during trial with specific questions
which would have undermined the government's case against Petitioner;
had trial counsel cross-examined Mr. <u>Corral</u> with the specific
questions there exists a reasonable probability, sufficient to
undermine confidence in the outcome of the trial that the jury
verdict would have been different had trial counsel's representation
been sufficient.**

During the trial proceedings in this case, Petitioner provided
trial counsel with a set of specific relevant questions to cross-
examine the government's chief witness Juan Corral, questions
which went directly to the allegations made by the government
and formed the basis for the underlying indictment in this case.

Trial  counsel flat out refused to cross-examine the govern-
ment's witness Mr. Corral with the questions presented.  Copies
of the actual written questions provided to trial counsel are
attached hereto and marked Exhibit __A__, and are hereby incorpora-

ted by reference as though fully set forth herein. See Fed. R. Civ. P. 10(c); see, Rosenblum v. Travelbus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002).

Following the juries return of the verdict and prior to sentencing, Petitioner once again requested that trial counsel consider utilizing the attached written questions marked Exhibit __A__ and call Mr. Corral to testify at the sentencing proceeding in this matter; counsel agreed.

The questions were asked and the witness Mr. Corral answered with testimony that generally undermined the government's version of the case and those answers seriously brings into question the validity of the testimony given by Mr. Corral during trial and the government's allegations forming the basis for both the grand jury proceedings and the resulting indictment from those proceedings, creating a reasonable probability that the jury verdict would have been different had trial counsel utilized the provided question during cross-examination during the trial in this case.

Under Strickland, a defendant must establish both that his counsel's performance at sentencing was seriously deficient and also that he suffered prejudice as a result of such deficiency. Strickland, 466 U.S. at 687.

When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." Strickland, 466 U.S. at 688. A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective

at the time, recognizing that "counsel is strongly presumed to
have rendered adequate assistance and made all significant decisions
in the exercise of reasonable professional judgment." Id. at 690.
In essence, a defendant has the burden of proving, by a preponderance
of the evidence, that "counsel made errors so serious that counsel
was not functioning as the 'counsel' guaranteed the defendant
by the Sixth Amendment." Id. at 687.

"Because advocacy is an art and not a science,...[counsel's]
strategic choices must be respected" if they were "made after
thorough investigation of law and facts relevant to plausible
options." Id. at 681, 690. Such choices can vary greatly from
attorney to attorney and from case to case, and reviewing courts
must scrutinize these choices with a great deal of deference.
Indeed, such strategic choices are virtually unchallengeable.
Id. As explained by the Supreme Court.

Judicial scrutiny of counsel's performance must be deferential.

A fair assessment of attorney performance requires that every
effort be made to eliminate the distorting effects of hindsight,
to reconstruct the circumstances of counsel's challenged conduct,
and to evaluate the conduct from counsel's perspective at the
time. Because of the difficulties inherent in making the evaluation,
a court must indulge a strong presumption that counsel's conduct
falls within the wide range of reasonable professional assistance;
that is, the defendant must overcome the presumption that, under
the circumstances, the challenged action might be considered sound
trial strategy. Id. at 689 (internal quotation marks and citations
omitted). Thus, counsel cannot be adjudged ineffective for perform-

ing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Id.

In this case, petitioner contents that his trial counsel's failure to cross-examine and confront Mr. Corral, the sole witness for the government, had no tactical justification and, instead, amounted to constitutionally deficient performance.

The record in this case leaves no doubt that there is a reasonable probability that the jury's verdict could have been different had trial counsel cross-examined the witness with the provided questions and subject his direct testimony to cross-examination, "the greatest legal engine ever invented for the discovery of truth." California v. Green, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)(quoting Wigmore, Evidence 1367).

Therefore, the decision on trial counsel's part was unreasonable and does not amount to any trenching upon sound trial strategy after the fact, nor would it implicate the injunction that "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken." Campbell v. coyle, 260 F.3d 531, 551 (6th Cir. 2001). The failure of counsel to participate in a critical phase of the trial, and to subject the State's case to meaningful adversarial testing, on the sole ground of lack of preparation, "was not a reasonable strategic decision entitled to deference." Moss v. Hofbauer, 286 F.3d 851, 864 (6th Cir. 2002)](finding that defense counsel's reliance on the cross-examination of an eyewitness by a co-defendant unreasonable when the two defendants' interests were not aligned).

**GROUND SIX:** The district court forced Petitioner to acquiesce to the predicate state offenses which were utilized to support the sentencing enhancement applied to Petitioner under 21 U.S.C. §851.

During the §851 hearing that took place in this case, the district court forced Petitioner to acquiesce to the validity of the predicate state offenses which were utilized to support the sentencing enhancement applied to Petitioner and resulted in a sentence of life under 21 U.S.C. §841(b)(1)(A).

A review of the §851 hearing transcript will support the instant claim . The §851 hearing record is therefore and hereby incorporated by reference as though fully set forth herein. See Fed.R.Civ.P. 10(c).

This ground shall be supplemented following the taking of discovery and Petitioner obtaining certified copies of the §851 hearing transcript in question.

**GROUND SEVEN:** Counsel was ineffective for his failure to properly cross-examine witnesses regarding the conspiracy as it related to gang conspiracy that was not legally alleged in the indictment.

In support of this claim, trial transcript Vol. 3, pages 398 and 428 are incorporated by reference. Also, Movant invokes the holding in United States v. Lechuga, 994 F.2d 346 (7th Cir. 1993), also trial transcript Vol. 4, pages 600, 634, 807 are incorporated by reference in support of this ground.

**GROUND EIGHT:** Counsel was ineffective for failing to utilize Juan Corral's testimony during trial that he was self-employed and that movant didn't work for him.

In support of this claim, trial transcript Vol. 4, page 823.

GROUND NINE: Counsel was ineffective for failing to argue that movant's sentence was unreasonable and excessive and/or that my assessed Criminal History calculation (851) overrepresented my actual Criminal History background.

GROUND TEN: Counsel was ineffective for failing to empeach Juan Corral's testimony.

GROUND ELEVEN: Counsel was ineffective for failing to argue:

The Government's THEORY of my PARTICIPATION IN THE CONSPIRACY, IS FLAWED FOR TWO REASONS FIRST AND FOREMOST THE GOVERNMENT's star witness and only witness in this case Corral testifies at trial that I did not work for him. Trial Transcript. Also he never testifies that the May 13 calls were because I was acting as a look-out/sercurity for him on that day or any other day or time within the charged conspiracy.

During sentencing Corral testifies that I was not a sercurity man for him. Sentencing Transcript, page 29. He also testifies I wasn't assisting him in any drug deal during the May 13 call. I didn't know if he possessed any drugs at his home. Sentencing Transcript, 30.

His testimony was I didn't know where he kept or stored his drugs. Sentencing, 31, Second during sentencing the judge only held me accountable for the drugs Corral allegedly sold me so if the judge would have believed the government's theory of me being a look-out man for Corral during his conspiracy then he should have held me foreseeable for the amounts that I was looking out for unfortunately the government can't point to any time when something like this took place.

Therefore these accusations made by the Government prejudice

Liscano and caused a variance in the Indictment requiring rever-
sal in Liscano's conviction.

**GROUND TWELVE: Counsel was ineffective for failing to move
for discovery of the Kane County Jail phones related to Juan
Corral which could have been used to impeach Mr. Corral's testi-
mony.**

My trial counsel Mr. Lowe coerced me into stipulating to
matters related to telephone calls originating from the Kane
County Jail related to conversations that Mr. Juan Corral was
a party to. These telephone calls were critical to my proving
that I was not guilty of the charges advanced in the indictment.

**GROUND THIRTEEN: Culmulative errors of counsel deprived
movant of a fair trial.**

Movant claims that he was denied the effective assistance
of counsel based on counsel's culmulative errors as advanced
in all grounds supra, which taken together, deprived movant
of his guaranteed right to the effective assistance of counsel
under the Sixth Amendment to the United States Constitution.

## MOVANT'S REQUEST FOR AN EVIDENTIARY HEARING

Movant submits that under the principles of Townsend v.
Sain, 372 U.S. 293 (1963), he has met the necessary requirements
to warrant holding an evidentiary hearing in order to develop
the factual basis for his ineffective assistance of counsel
claims advanced.

Wherefore, all premises considered, movant prays that the Honorable Court vacate, set aside, or correct movant sentence on the grounds advanced herein and that this matter be set for an evidentiary hearing on all grounds presented.

Dated: 4-2-09 Resubmitted

Respectfully submitted,

STEVE LISCANO, Pro Se
Federal Correctional Complex
P.O. Box 33
Terre Haute, IN 47808-0033

## CERTIFICATE OF SERVICE

I hereby certify that an original and two correct copies of the foregoing motion have been mailed to the Clerk of the Court, United States District Court for the Northern District of Illinois at 219 S. Dearborn St., Chicago, Illinois 60604 via first-class certified U.S. Mail, postage prepaid on this   day of February, 2009; also a true correct copy of the same has been sent to the following adverse party of interest via first-class U.S. Mail, postage prepaid as follows:

U.S. Attorney
219 S. Dearborn St.
Chicago, Illinois 60604

STEVE LISCANO

<u>EXHIBIT A</u>

Didn't gave *→

## Q$^s$ FOR CORRAL   testify at trial, sold drugs

pg 1

1. WAS DEFENDANT LISCANO ON YOUR PAYROLE AS A SECURITY MAN?   No

*LAST!*

2. WHEN DEFENDANT LISCANO CALLED YOU about THE MARSHALS OR POLICE BY YOUR HOUSE WAS HE ASSISTING YOU IN SECURITY FOR A DRUG DEAL?  just a phone call police in your

3. DID DEFENDANT LISCANO EVER ASSIST YOU AS A SECURITY MAN OR A SORT OF PUBLIC RELATIONS MAN IN YOUR DRUG DEALING?

4. WAS DEFENDANT LISCANO AWARE OF THE NUMBER OF "PLAYERS" INVOLVED IN YOUR DRUG CONSPIRACY?

5. DID DEFENDANT LISCANO HAVE ANY KNOWLEDGE or WAS HE AWARE THAT YOU DEALT WITH ALL THOSE CUSTOMERS IN ANY OF THE INDICTMENTS OR THIS INDICTMENT, OR WHOM YOUR CUSTOMERS EVEN WHERE?

6. DID DEFENDANT LISCANO HAVE ANY KNOWLEDGE OF ANY OF YOUR COCAINE STORAGE HOUSES OR WHERE THEY WERE?

7. DID YOU USE JOSE AGGUIRRE IN YOUR COCAINE BUSINESS BECAUSE HE WAS A LATIN KING?

8. DID YOU USE YOUR MEMBERSHIP AS A LATIN KING TO OBTAIN AND DISTRIBUTE COCAINE?

9. DID LISCANO KNOW THAT ALVARO CHAVEZ WAS SUPPLIEING YOU WITH KILOGRAMS OF COCAINE? DID HE KNOW WHO WAS SUPPLIEING YOU WITH COCAINE?

Pg.2

OK 10. DID YOU EVER TELL MR. LISCANO THAT YOU SOLD COCAINE TO ANY LATIN KINGS?

11. ISN'T IT TRUE THAT THE LATIN KINGS DIDN'T DISCUSS THERE DRUG BUISNESS WITH EACH OTHER?

WHY?

OK? 12. DID DEFENDANT LISCANO HAVE ANY KNOWLEDGE OR WAS HE AWARE THAT YOU WHERE SELLING ALL THOSE KILLOGRAMS?

OK 13. DID YOU HAVE AN AGREMENT WITH DEFENDANT LISCANO FOR HIM TO HELP YOU WITH YOUR COCAINE OPERATION?

14. COULD YOUR DRUG DEALING OPERATION HAVE CONTINUED WITHOUT DEFENDANT LISCANO, WOULD YOU HAVE STILL BEEN ABLE TO SELL OR GET RID OF YOUR COCAINE WITHOUT HIM?

15. HOW ABOUT FOR LISCANO TO ASSIT YOU IN THE FUTURE, TO SELL COCAINE WAS THERE AN AGREEMENT?

FLIP →

16. WHEN YOU SOLD YOUR DRUGS DID YOU RECEIVE ANY OF THE PURCHASERS PROFITS?

# ALL ONE ISSUE?

3RD

HAVE YOU EVER HAD A COCAINE ADDICTION?
HAVE YOU EVER HAD A MARYJUANA ADDICTION?
YOU DID TEST POSITIVE FOR SUBSTANCE ABUSE
ON SEVERAL OCCASIONS WHILE ON PAROLE FOR
A PRIYOR DRUG CONVICTION CORRECT?

1 YOUR PHONE WAS TAPPED FROM MAY 8TH TILL JUNE 24
RIGHT?

*didn't owe him*

2. DID DEFENDANT LISCANO OWE YOU FOR A DRUG DEBT?

3 WHEN DID LISCANO RECEIVE THIS COCAINE.

4. THERE'S NO CONVERSATIONS WITH YOU AND MR. LISCANO
AFTER JUNE 4TH UNTILL JUNE 23 AND THAT CALL ON
THE 23RD IS FOR DIRECTIONS TO THE PICNIC.
CORRECT?

TRAN.



1. BUT AS A MATTER OF FACT YOU HAD A CALL WITH
MR. LISCANO ON JUNE 4TH TALKING ABOUT WEATHER
OR NOT THE SUN WAS GOING TO COME OUT?

2. YOU SAID THAT YOU WERE GOING TO GO TALK WITH
YOUR SUPPLIER AND YOU WOULD CALL LISCANO BACK?

3. BUT YOU DIDN'T CALL LISCANO BACK HE CALLS YOU
2HRS. LATER AND YOU TOLD HIM YOU WEREN'T GOING
TO BE SUPPLIED WITH COCAINE?

BUT THAT WAS A LIE BECAUSE YOU DID RECEVE
COCAINE THAT DAY? CORRECT?

FLIP→

4TH

MR. 4. WELL WHY DIDNT YOU SELL MR. LISCANO COCAINE IF HE IS A FELLOW LATIN KING?

5. SO WHEN DID HE RECEIVE THIS COCAINE HE SAPPOSEABLY OWED YOU FOR?

6. YOU TESTIFIED (VOL. 4 PG. 773) THAT YOU HAD A CALL FROM THE KANE COUNTY JAIL TO AGGUIRRE TO COLLECT A DRUG DEBT FROM LISCANO. BUT IN FACT THATS NOT TRUE. YOU NEVER SPOKE TO AGGUIRRE ABOUT COLLECTING A ▬▬ DEBT OWED TO YOU BY LISCANO?

ASK 2nd half

at trial to someone

["ME - WELL I LISTENED TO ALL THOSE CALLS YOUR HONOR AND I NEVER HEARD ANY CALL WERE AGGUIRRE AND CORRAL ARE TALKING ABOUT A DEBT WHERE I OWE CORRAL".]

## LAST SERIES OF Q'S

1. YOU GAVE MR. ESTREMERA 2 KILOS ON JUNE 5 BUT HE ONLY WANTED ONE KILO FROM THE TWO YOU GAVE HIM CORRECT?

2. WHY DIDN'T YOU GET THE EXTRA KILLO ESTREMERA DIDN'T WANT AND GIVE IT TO LISCANO?

3. OR WHY DIDN'T YOU TELL LISCANO TO GO AND PICK UP THE KILO FROM ESTREMERA?

[NO FUTHER Q'S YOUR HONOR]



4. HAVE YOU EVER SEEN OR KNOWN MR. LISCANO TO BUY; SELL OR HAVE ANY DRUG RELATIONSHIPS WITH DEFENDANTS PENA OR ESTREMERA?

Anyone isn't + possibly

~~melt~~ Viela in the

only ~~safe~~ drugs

you sold as part of this conspiracy

Baum Jr X

did *fnt* drugs
*than he'd sell to others*

*less important*

*so this he was saul*
*better customer*
*— swollen century*

7 — 9

13 — 13 Kilos

*might be 16 Kilos*

<u>EXHIBIT B</u>

1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
           Plaintiff,              )
                                   )
     vs.                           )   No. 02 CR 719-11, -16
                                   )
ABRAHAM ESTREMERA and              )
STEVE LISCANO,                     )   Chicago, Illinois
                                   )   November 29, 2005
           Defendants.             )   10:00 o'clock a.m.

TRANSCRIPT OF PROCEEDINGS - Sentencings
BEFORE THE HONORABLE JAMES F. HOLDERMAN

APPEARANCES:

For the Plaintiff:          HON. PATRICK J. FITZGERALD
                            United States Attorney
                            219 South Dearborn Street
                            Chicago, Illinois   60604
                            (312) 353-4280
                            BY:  MR. LAWRENCE BEAUMONT

For Defendant Estremera:    MR. DONALD V. YOUNG
                            20 North Clark Street
                            Suite 1725
                            Chicago, Illinois   60604
                            (312) 332-4034

For Defendant Liscano:      MR. ROBERT A. LOEB
                            221 North LaSalle Street
                            Suite 1938
                            Chicago, Illinois   60601
                            (312) 368-0611

U.S. Probation:             Ms. Danielle Brown
                            Mr. Zakary Freeze

Also Present:               FBI Agent Paul Bock

COLLEEN M. CONWAY, CSR, CRR
Official Court Reporter
219 South Dearborn Street, Room 2144-A
Chicago, Illinois   60604
(312) 435-5594
colleen_conway@ilnd.uscourts.gov

Corral - direct by Loeb                    29

1    BY MR. LOEB:

2    **Q.**   Mr. Liscano, excuse me.  You don't have a specific

3    memory of selling half a kilo to Mr. Liscano then, do you?

4    **A.**   For the ten thousand, I do.

5                THE COURT:  I am sorry.  I didn't hear that last

6    answer.

7                THE WITNESS:  I said for the ten --

8                THE COURT:  For the ten thousand, you do?

9                THE WITNESS:  Yes.

10               THE COURT:  Okay.

11   BY MR. LOEB:

12   **Q.**   Steve Liscano didn't ever work for you as like a

13   security man, did he?

14   **A.**   No, he did not.

15               MR. BEAUMONT:  I object.  That's not relevant.

16   It's not relevant to any issue before this Court.

17               There's no issue is he a member of the conspiracy

18   or not.  The only issue is, according to counsel, is the

19   foreseeability of the drugs, I suppose.

20               THE COURT:  I understand your objection.  I will

21   allow --

22               MR. LOEB:  Judge, another question or two, I think

23   we'll tie it up.

24               THE COURT:  I will allow the inquiry.

25               You may proceed.

Colleen M. Conway, Official Court Reporter

1   BY MR. LOEB:

2   Q.   You recall that there was a time that Steve Liscano gave

3   you a phone call and said there are some cops on your block?

4   A.   Yes.

5   Q.   Okay.  When he made that call, he wasn't in the act of

6   assisting you on any drug deals, was he?

7   A.   No, he wasn't.

8   Q.   To your knowledge, he didn't know whether or not you

9   had -- you possessed any cocaine at your home?

10  A.   No, he did not.

11  Q.   A lot of your customers were individuals who were

12  unrelated to the Latin Kings street gang, right?

13  A.   That's correct.

14  Q.   By that time, Steve Liscano wasn't even active in the

15  Latin Kings anymore, right?

16  A.   I can't say if he was or he wasn't.

17  Q.   Okay.  You knew him from the past being part of the

18  Latin Kings, right?

19  A.   That's correct.

20  Q.   But to your knowledge -- or you have no knowledge that

21  he was active in the Latin Kings at that point, right?

22  A.   Not specific knowledge.

23  Q.   Okay.  And as to all of the customers that you had

24  outside the Latin Kings, they accounted for a majority, more

25  than half of all the cocaine that you sold, right?

Corral - direct by Loeb                    **31**

1    **A.**   That's correct.

2    **Q.**   They were your biggest customers, the ones outside the

3    Latin Kings, right?

4    **A.**   Yes.

5    **Q.**   To your knowledge, Steve Liscano didn't know of where

6    you stored cocaine, correct?

7            MR. BEAUMONT:  And, Judge, I object.  I think all

8    these questions are irrelevant to any issue before this

9    Court.

10           THE COURT:  I understand your position.  I am going

11   to overrule the objection.

12           THE WITNESS:  Do you want me to answer that?

13           THE COURT:  You may answer the question.

14   BY THE WITNESS:

15   **A.**   Could you repeat it, please.

16           THE COURT:  Pose the question again, please.

17           MR. LOEB:  Okay.

18   BY MR. LOEB:

19   **Q.**   To your knowledge, Steve Liscano didn't know where you

20   kept your cocaine, right?

21   **A.**   That's correct.

22           MR. LOEB:  Judge, I have two questions that I want

23   to ask, but I have to run by co-counsel.  Let me just show

24   them.

25           THE COURT:  All right.

Corral - direct by Loeb                                    **34**

1      THE COURT:  But if you don't repeat it, I will

2  trust you to properly refresh my recollection with your

3  argument.

4      MR. LOEB:  Okay.  Then --

5      THE COURT:  So the answer to your question is

6  that's correct.

7      MR. LOEB:  Okay.  Let me just confer.

8      (Counsel conferring with Defendant Liscano.)

9      MR. LOEB:  Okay.  Just a couple of other questions.

10      THE COURT:  All right.

11  BY MR. LOEB:

12  **Q.**   You never told Mr. Liscano about other customers that

13  you had, right?  You just had a relationship with him, right?

14  **A.**   That's correct.

15  **Q.**   And as far as you know, Mr. Liscano didn't have any

16  knowledge or wasn't aware where you were selling your other

17  drugs, right?

18  **A.**   That's correct.

19  **Q.**   You didn't have any agreement with him to help you with

20  your sales to other people, right?

21      MR. BEAUMONT:  And, again, I object to that.  I

22  just think all these questions are irrelevant.

23      THE COURT:  I understand your position.  Overruled.

24  BY THE WITNESS:

25  **A.**   That's correct.

Colleen M. Conway, Official Court Reporter

Corral - direct by Loeb                    **35**

BY MR. LOEB:

**Q.**  Okay.  Nor did you have an agreement for him to help you
in the future selling cocaine, right?

**A.**  That's correct.

**Q.**  In fact, isn't it possible that the total amount of
drugs that you sold Mr. Liscano was less than five kilograms
of cocaine during this nine-month period?

**A.**  I just gave the best estimate I could at the time I was
asked.

**Q.**  That's just an estimate?

**A.**  Yes.

**Q.**  So it's possible that it was less than five keys?

**A.**  Again, the best estimate was the one I gave.

**Q.**  But it's possible that it was less than five keys, is --
you gave your best estimate.  It's possible that, in reality,
it was less than five kilograms, right?

**A.**  I estimated from 2001 to 2002, and that's the estimate I
had came up with.

**Q.**  And I'm not arguing with your estimate.

**A.**  Yes.

**Q.**  I'm asking you isn't it possible that the total amount
was less than five kilograms?

**A.**  Can't see how.

**Q.**  But it is possible?

        MR. BEAUMONT:  Objection, I object.

Colleen M. Conway, Official Court Reporter

53

1      Actually, just looking at the number of pages Mr.

2  Liscano flipped over, maybe this might take time.

3      And so, Mr. Liscano, if you want to have a seat --

4  I am sorry.  Mr. Liscano, you stay up.  Mr. Estremera, you

5  have a seat.

6      Mr. Liscano, changes or modifications.

7      DEFENDANT LISCANO:  I have some objections as far

8  as to page 2, lines 61 through 63, because Juan Corral

9  wasn't -- it says that, "Juan Corral was a ranking member."

10     Juan Corral wasn't a ranking member for the Latin

11 Kings.  From pages -- page 3, line 73 contradicts this.

12     I have objections to page 3, lines 67 through 69,

13 because none of this was proven or allowed at trial.

14     This case was not to be treated as a gang

15 conspiracy, but only as a Juan Corral drug conspiracy, as was

16 said before opening of trial by the Court, Your Honor.  So it

17 should not be allowed in my PSI.

18     On the same page, page 3, lines 69 and 70, never

19 was there any proof of this.  This should be removed.

20     The same page, 3, lines 71 through 73, Corral is

21 considered to be the hub of the wheel, not me.

22     This -- in this conspiracy, why didn't my attorney

23 ask for multiple conspiracy jury instructions like I had

24 asked him to?

25     I also object to what Paul Bock claims you have to

1 do to become a member of the Latin Kings, because that has

2 nothing to do with this case, and I became a Latin King

3 because of the neighborhood I grew up in.

4 The same page, page 3, lines 73 and 74, Corral did

5 not have significant influence among the gang. As a matter

6 of fact, he testified that he didn't even trust the Kings

7 involved; in the trial transcripts, volume 3, page 854.

8 Lines 74 and 75, I object to this because it was

9 not proven that Corral was one of the main suppliers to the

10 Latin Kings.

11 There's only 13 total Latin Kings on this case,

12 which consists of 52 defendants, out of a membership that

13 numbers in the 80s, none of which ever proffered or testified

14 that they sold me nor I sold them cocaine.

15 Page 3, as far as to my criminal conduct, lines 81

16 and 82, I would like stricken because I did not allegedly

17 come into this conspiracy until September 2001.

18 Lines 83 through 85, I object to the 13 kilograms.

19 There is no corroborating evidence to verify this, or to

20 verify that I distributed to other customers or any of the

21 co-defendants.

22 Lines 85 and 86, the evidence at trial was that I

23 bought a half a kilo within a two-month period, but I've

24 proved to you, Your Honor, that Corral lied to you and to the

25 jury about the half-a-kilo sale, because he could not have

1   sold me half a kilo when he did not have any drugs for resale

2   that day, as I've had those transcripts given to you and

3   asked you to look at the phone transcripts of May 13th.

4          THE COURT: And I have read the materials you have

5   submitted.

6          DEFENDANT LISCANO: Okay, Your Honor.

7          THE COURT: And your counsel very ably pointed out

8   the various individuals that Mr. Corral told he did not have

9   drugs.

10         DEFENDANT LISCANO: I also have a proffer from Mr.

11   Corral that says he didn't have drugs November and December

12   of 2001.

13         Corral also testified that there were times he

14   couldn't supply drugs because he didn't have any.

15         His grand jury testimony is that he received one

16   shipment per month which he sold in approximately one week.

17   So that means I had to have received cocaine from him every

18   shipment.

19         But if you listen to the call, to the CD calls of

20   6-4-02 and 6-8-02 and the tapes of 5-14-02, it shows who

21   Corral distributed his drugs to, and I had no part of it.

22         So if the evidence shows I never received drugs

23   from him on those times he was supplied, how then can you

24   believe his perjured testimony about me receiving drugs in

25   the past? That was not corroborated by any evidence

1    whatsoever.

2          I told my lawyer to use this as my defense of

3    innocence, but he refused to, just like he told me that we

4    could not object to what the prosecutor said on certain

5    issues.

6          Mr. Young on behalf of Mr. Estremera did object,

7    but my lawyer didn't, and I heard Mr. Young comment why Mr.

8    Loeb and Mr. Alvarez were not objecting as he said as he was.

9          THE COURT:  Let me clarify that point.

10         Any objection by any defense counsel inured to the

11   benefit of every other defendant unless it was disavowed.  I

12   don't remember Mr. Loeb ever disavowing that point.

13         So that's yours.  You still have that.

14         DEFENDANT LISCANO:  Okay.

15         THE COURT:  Mr. Loeb was following proper court

16   procedure when he did that.

17         DEFENDANT LISCANO:  Okay.  I have --

18         THE COURT:  And your rights were not harmed in any

19   way.  You may proceed.

20         DEFENDANT LISCANO:  Page 3, lines 86 and 87.

21         THE COURT:  You are still on page 3?

22         DEFENDANT LISCANO:  Yes.

23         THE COURT:  Okay.

24         DEFENDANT LISCANO:  The testimony at trial was that

25   I bought the cocaine.

1  Ms. Schultz -- some Ms. Schultz asking her if I had posted
2  any bond towards Corral's bond or if I owed him any money,
3  and she said no to this attorney.

4  Page 4, lines 105 through 111, and page 6, lines
5  176 and 177, it says I didn't know that Corral sold to other
6  Latin Kings, so that totally contradicts what's being said on
7  these lines.

8  Corral's testimony was that he didn't even trust
9  the Latin Kings. Volume 3, page 854 of the trial
10 transcripts.

11 On page 3, line 74, it says Corral was one of the
12 main suppliers of the Latin Kings, not the main supplier.
13 But if he was the main supplier to the Latin Kings, why are
14 there only 13 Latin Kings on this case out of over 80
15 members?

16 Furthermore, there's no proof of my knowledge of
17 any of the players in this case.

18 Page 4, line 112, there's no proof of me being a
19 member of the Latin King council, so I object.

20 Page 4, 112, lines 112 through 115, Aguirre
21 disclosed to the government in a proffer that he, in fact,
22 shot a man on Illinois Avenue, but not that he killed him.

23 I have his proffer right here.

24 Page 5, lines 161 through 165, I object. There are
25 no facts to support that I participated in this conspiracy

59

1   from September 2001 to June 2002 or that I bought 13 kilos.

2           Page 5, lines 166 through 168, there's no proof

3   that I was closely associated or involved with any

4   co-conspirators, as on page 6, line 176 clearly indicates.

5           Page 5, lines 169 and 170, Brian Medina is not a

6   member of the Latin Kings or on this case.

7           Page 5 and 6, lines 170 through 175, I don't know.

8   Didn't I just object to this in page -- at page 3, Your

9   Honor?  The same objection.

10          Page 6, lines 176 through 180, if there's no proof

11  or evidence that I knew, which I didn't, Your Honor, then how

12  can I be held responsible for other people's actions?

13          1B1.3, relevant conduct, states I cannot be held

14  accountable for other actions unless I participated in

15  activities with them.

16          Example, No. 6, page 276 of my handbook, which I

17  have right there on the desk there, Your Honor, explains

18  that.

19          Page 6, line --

20          THE COURT:  And the handbook you're referring to is

21  the --

22          DEFENDANT LISCANO:  Seventh Circuit.

23          THE COURT:  The Seventh Circuit handbook?

24          DEFENDANT LISCANO:  Yes, Your Honor.

25          THE COURT:  All right.  As opposed to the

Colleen M. Conway, Official Court Reporter

**60**

1    sentencing guideline handbook?  All right.

2            DEFENDANT LISCANO:  Page 6, lines 181 through 187,

3    example 6 of relevant conduct says I could have known he sold

4    cocaine to people, but as long as I wasn't directly involved,

5    I can't be responsible for their actions.

6            Page 6, lines 191 and 192, I object to being

7    responsible for 13 kilos.

8            Page 6, lines 193 through 196, I object to Level

9    38.  I was not able to foresee that the conspiracy involved

10   in excess of 150 kilos.

11           That is it, Your Honor.  I have these things

12   somewhat to back up what I am speaking about.

13           THE COURT:  All right.  Why don't you hand me --

14           DEFENDANT LISCANO:  I don't know whether or not --

15           THE COURT:  Well, first, you should hand them to

16   Mr. Beaumont.

17           MR. BEAUMONT:  Judge, I will -- I know the reports,

18   so --

19           THE COURT:  Okay.

20           MR. BEAUMONT:  -- you can hand them to the Court,

21   and I'll look up the reports later.

22           THE COURT:  All right.

23           DEFENDANT LISCANO:  Would you like them, Your

24   Honor?

25           THE COURT:  I would.

**68**

1  objections, and I have reviewed those objections.

2          I don't know that we need to go through them in

3  detail since they are set forth in your October 19th, 2005

4  writing, document docketed at document No. 492.

5          But with regard to your objections that you were

6  never charged with -- starting on page 1, or the first page

7  of the Presentence Report -- and, Ms. Brown, I guess we will

8  talk with you at this point -- that Mr. Estremera has never

9  been charged with 21 U.S.C. § 841(a)(1).  The charge actually

10  was 846.

11          Let me just inquire, should we make that change on

12  the first page?

13          MS. BROWN:  On the face sheet, Your Honor?

14          THE COURT:  On the face sheet.

15          MS. BROWN:  Yes, Judge.

16          THE COURT:  Yes.  All right.  So strike § 841(a)(1)

17  and put 846, and that is sustaining that objection.

18          With regard to the objection at -- it is on -- the

19  pages aren't internally numbered, but it is at lines 65 to

20  67, your objection is that there was only one firearm, not

21  two firearms.

22          Let me ask the government what its position is on

23  that.

24          MR. BEAUMONT:  My position is I don't think it

25  matters, so we'll --