UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED
Feb 12 2010

| | |
|---|---|
| STEVE LISCANO, <br>         Defendant, <br> v. <br> UNITED STATES OF AMERICA, <br>         Respondent. | ) <br> )    No. 09 CV 1347 <br> )    Chief Judge James F. Holderman <br> ) <br> ) <br> ) <br> ) |

### DEFENDANT STEVE LISCANO'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S SECTION 2255 MOTION

**Comes now,** the Defendant Steve Liscano, by way of pro se, reply as follows to the Government's response to Defendant's Motion under 28 U.S.C. § 2255.

1. The § 2255 Motion in this matter seeked to set aside Defendant Liscano's conviction and life sentence for a narcotics conspiracy in case 02 CR 719. Defendant therefore argues that the attorney who represented him at trial and sentencing (Robert A. Loeb) was ineffective.

2. In Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The Supreme Court established a two prong test to govern ineffective assistance of counsel claims: To obtain reversal of a conviction or to vacate a sentence based

on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceedings would have been different. Id. 466 U.S. at 688-689; Williams v. Taylor, 120 S. Ct. 1495, 1512-16; 2000 U.S. LEXIS 2837, **53-64; 146 L. Ed. 2d 389 (2000).

3. The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

The Court clarified that this reference to "highly deferential scrutiny referred only to the first performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy,"

Strickland v. Washington, 466 U.S. at 689-691.

The Court added that,

> "... Strategic choices made after through investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations. In other words, counsel has a duty to make a reasonable decision that makes particular investigations un-necessary." Id.

4. Two years after its Strickland decision, the Court reaffirmed that this portion of the decision set forth what test that can be made in evaluating whether the performance of counsel was within the range of "reasonable professional assistance." or fell below an objective standard of reasonableness. **Kimmelman v. Morrison**, 477 U.S. 365, 385-387, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986).

The Supreme Court therefore noted that,

> "... a single, serious error may support a claim of ineffective assistance of counsel.

**Kimmelman v. Morrison**, 477 U.S. at 384.

The Court then added that this "single serious error" could cause counsel's performance to fall below the level of reasonable professional assistance," even where, "counsel's performance at trial [was] generally creditable enough," and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." Id. 477 U.S. at 386.

5. In short, no deference is due to counsel's actions, and the performance of counsel falls below the Strickland objective standard or reasonableness if counsel's specific acts or omissions are not demonstrably the result of actual strategic choices made between or among all plausible options after through investigation of law and facts relevant to [t]he options. **Strickland**, 466 U.S. at 691; Kimmelman v. Morrison, 477 U.S. at 385-387;

4

Williams v. Taylor, 120 S. Ct. 1495, 1512-16; 2000 U.S. LEXIS 2837, **53-54; 146 L. Ed. 2d 389 (2000).

6. Where a convicted defendant like Liscano is making a claim of ineffective assistance of counsel, the defendant,

> "... must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

Strickland v. Washington, 466 U.S. at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.

7. In the instant case, Mr. Liscano has made specific, sworn, factual allegations which this court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

Assuming for the purposes of this portion of the Strickland analysis that the forgoing failures were potentially prejudicial to Mr. Liscano it cannot be said from the present record that counsel's "performance" did not fall below the objective standard of Strickland. This is because Mr. Liscano has pleaded that counsel's failures in defending Mr. Liscano were based on counsel's

failures to question the Government's witness on facts material to him in the pretrial, trial, and direct appeal process. This was not an "innocent inadvertence" by counsel because Mr. Liscano specifically requested that counsel ask these questions.

8.                              ARGUEMENT

In writing for the majority in **Strickland v. Washington**, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), Justice O'Connor stated the general rule that,

> "... actual ineffective claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."

Id. 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, justice O'Connor set forth the now known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

**Id. 466 U.S. at 695, 80 L. Ed. 2d at 698.**

While the Court noted the Government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case",[1] the Court specifically and

explicitly rejected this argument by the Government.[2]

In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

**Strickland v. Washington**, 466 U.S. at 694, 80 L. Ed. 2d at 697; **Williams v. Taylor**, 120 S. Ct. 1495, 1519; 2000 U.S. LEXIS 2837, **76; 146 L.Ed. 2d 389 (2000).

The Court further specifically rejected the application of the "actual prejudice" standard of **United States v. Frady**, 456 U.S. 152, 71 L. Ed. 2d 816, 102 S. Ct. 1584 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgement. See **United States v. Frady**, 456 U.S. 152, 162-169, 71 L. Ed. 2d 816, 102 S. Ct. 1558 (1982). An ineffectiveness claim, however, as our articlation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, see **id. at 126**, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

**Strickland,** 466 U.S. at 697-98, 80 L. Ed. 2d at 700.

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decisionmaker in the challenged proceeding, then try to determine which factors were or were not "effected" by counsel's errors.

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors], a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

**Strickland v. Washington,** 466 U.S. at 696, 80 L. Ed. 2d at 699.

Where through "hindsight" the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. **Strickland,** 466 U.S. at 694-95; United States v. Glover, 531 U.S. 198; 121 S. Ct. 696; 148 L. Ed. 2d 604; 2001 U.S. LEXIS 639 (2001); Williams v. Taylor, 120 S. Ct. 1495, 1512-16; 2000 U.S. LEXIS 2837, **53-64; 146 L. Ed. 2d 389 (2000).

This rule is applicable to find "prejudice" where hindsight

---

[1] **Id.** 466 U.S. at 694, 80 L. Ed. 2d at 697.

[2] **Id.** This, of course, means that the "plain error" standard also does not apply to ineffective assistance of counsel claims. **Id.** See **United States v. Olano,** 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict....").

8

demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant like Liscano of consideration.

In the instant case, Mr. Liscano has made specific, sworn, factual allegations, in his § 2255 motion, that counsel failed to ask pertinent questions that was requested by Liscano in order to bring forth facts that would have "sharply underciut" the Government's theory of Liscano's involvement in the Government's key witness, Juan Corral's drug conspiracy. And that he was prejudiced by counsel's objectively unreasonable performance in the trial and appeal process, when counsel failed to ask the requested questions at trial or on appeal.

The duty of counsel therefore is not merely to do 'something' rather than nothing on behalf of one's client, but to act as the client's effective advocate during each critical stage of the defense. **Fisher v. Gibson, 282 F.3d 1283, 1307 (10th 2002).** When a matter is central to the theories of both prosecution and defense, counsel's obligation to meet the prosecution's evidence is heightened. **Rompilla v. Beard, 162 L. Ed. 2d 360, 125 S. Ct. 2456, 2462 (2005).**

Throughout the Government's case-in-chief Liscano was being portrayed by the Government as Juan Corral's own little security man. See **T. Tr.** at 1231-32.

20    How about Steve Liscano? What's

his role in this

21    illegal business? Part protector, part

public relations man,

22    Security.

The Government closed its case-in-chief by summing up what the Government's evidence proved at trial and the role's each of the defendants played in the conspiracy.

As noted above, the Government's theory when it came to Liscano, was that Liscano worked for the Government's witness "Juan Corral" as part protector, part public relations man, security. **T. Tr. at 1231-32.**

The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right... to have the assistance of counsel for his defense." U.S. CONST. amend. VI. An attorney must not only be present with a criminal defendant at his trial, but must also assist the defendant in a way that ensures the trial is fair. **Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).**

Mr. Liscano therefore pointed to specific acts or omissions by his counsel that constitute ineffective assistance, and that this court must decide whether these acts or omissions were made outside the wide rang of professionally competent assistance. **Berkey v. United States, 318 F.3d 768, 772 (7th Cir.2003).**

As noted, the Government's theory at trial that linked Mr. Liscano to "Corral's" conspiracy was that Liscano worked for "Corral" as part prtector, part public relations man, security. **T. Tr. at 1231-32.**

With a few questions, Liscano argues that defense counsel

10

could have "sharply undercut" the Government's theory that he worked for "Corral" and doing so, ensured that the defenses theory that Liscano and Corral had nothing more than a buyer-seller relationship.

The record likewise support Liscano's contention that had counsel ask these few questions that "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, 'meaning' a probability sufficient to undermine confidence in the outcome."' Eckstein v. Kingston, 460 F.3d 844, 849 (7th Cir.2006) (quoting Strickland v. Washington, 466 U.S. at 694).

Mr. Liscano argues that his counsel's performance fell "below an objective standard of reasonableness" when viewed from the record offered by the Government's own witness at sentencing when asked by counsel, whether Liscano ever worked for him as part protector, part public relations man, security as claimed by the Government. Sent. Tr. at 29.

Q.  Steve Liscano didn't ever work for you as like a security man, did he.
A.  No, he did not.

The Government's own witness "Corral" also gave testimony at sentencing that Liscano was not involved in his conspiracy, had counsel ask these questions at trial as Liscano requested, the jury would have heard "Corral's" testimony of Liscano's noninvolvement in a conspiracy with the Government's witness. The jury

would have also heard that when Liscano called "Corral" the very day that cops was on "Corral's" block, he was not in the act of assisting "Corral" in any way, as the Government claimed throughout this case. **Sent. Tr. at 30.**

The Government's theory that Liscano was working for "Corral" as his security man is once again outlined in the Government's closing. **T. Tr. at 1255.**

```
7       How about Estremera?  what are the calls on
8    Estremera's tapes?   Well,  from the very beginning,  he's had
9    the benefit of his security officer.   Security officer calls
10   Corral on May 17th and says,  "Cops are out there all over at
11   Luigi's," right?    Big red flag.  "What are we gonna do?"
12       What does Corral do?   who does he call?   Remenber he
13   says, "Call your neighbor"?   He calls Estremera, and  Estremera
14   is at the movies theaters.   And he gets out of the movie
15   theater and he wants to know whether he should come over.
16   Remeber that?    That;s because Corral says,  "I did a
17   perimeter."
```

As noted throughout the Government's case-in-chief Liscano was Juan Corral's security man and that this is one of the phone calls that proved it. This call along with the others that the Government is alleging Liscano was Corral's security man was refuted by the Government's own witness. In other words, Liscano has presented evidence that, under the circumstances, the conduct of counsel could not reasonably be considered "sound trial strategy." See **United States v. Traeger, 289 F.3d 461, 472 (7th Cir.2002) (citing**

12

Strickland, 466 U.S. at 689-90).

The specific questions in this case, then, are whether Mr. Liscano's counsel's failure to challenge a matter at trial central to the theories of both the prosecution, that "Liscano was apart of the conspiracy because he worked for Corral, as part protector, part public relations man, security" and the defenses theory that "Liscano had nothing more than a buyer-seller relationshipe with Corral, and was therefore not part of some elaborate drug conspiracy as claimed by the Government" "fell below an objective standard of reasonableness," and, if it did, whether there is a reasonable probability that, had counsel ask these questions at trial and not sentencing, it would have changed the result of the sentence.

The testimony by Juan Corral at sentencing also show that Mr. Liscano didn't know where Corral kept his cocaine, but the Government claim that Liscano was the security man for the conspirators. **Sent. Tr. at 31.**

Q.  To your knowledge, Steve Liscano didn't know where you
    kept your cocaine, right?
A.  That's correct.

The other phone call offered by the Government to prove Liscano was apart of, or agreed to participate in Corral's single, larger conspiracy alleged in the indictment, was also refuted by Corral at Setencing. **Sent. Tr. at 30.**

BY MR. LOEB:

Q. You recall that there was a time that Steve Liscano gave you a phone call and said there are some cops on your block?

A. Yes.

Q. Okay. When he made that call, he wasn't in the act of assisting you on any drug deals, was he?

A. No, he wasn't.

Q. To your knowledge, he didn't know whether or not you had -- you possessed any cocaine at your home?

A. No, he did not.

At the time Liscano made the call to Corral telling him that he had seen law enforcement officers near his residence, Liscano was not attempting to conceal Corral's drug conspiracy, as was acknowledged by Corral in his testimony at Liscano's sentencing.

Although counsel for Liscano was equipped with Corral's sentencing testimony that clearly refute the Government's theory of the two phone calls made by Liscano, counsel still allowed the Seventh Circuit Court of Appeals to be duped into believing that the calls made by Liscano was made to conceal Corral's larger conspiracy.

Liscano therefore argues that had counsel's performance during trial and appeal had not been deficient, the Seventh Circuit Court of Appeals would not have found that there was no variance with respect to the proof offered against Liscano ("two phone calls") had counsel pointed out the testimony offered by Corral

at Liscano's sentencing hearing.

9. The Seventh Circuit Court of Appeals denied Liscano's variance arguement based on the two phone calls made by Liscano. **United States v. Bustamante, 493 F. 3d 879, 885 (7th Cir.2007)** where the Court addressed the "hub and spoke" or "wheel" conspiracy, in this case, which is "an arrangement in which a core conspirator ... moves from spoke to spoke, directing the functions of the conspiracy." (quoting **United States v. Chandler, 388 F.3d 796, 807 (11th Cir.2004)**). As noted by the court "for a hub and spoke conspiracy to function as a single unit, a rim must connect the spokes together, for otherwise the conspiracy is not one but many." **Bustamante, 493 F.3d at 885.**

The connective tissue used to link Liscano to Corral's larger conspiracy was the phone calls as stated above. Therefore, had counsel ask Liscano's requested questions at trial and not sentencing, counsel would have met the prosecution's evidence with evidence that "sharply undercut" the Government's theory, and had counsel presented the testimony during the appeal stage the Seventh Circuit Court of appeals would have had a better understanding of the evidence to determine whether there was a true variance with respect to the proof offered against Liscano, the two phone calls, which was refuted by the Government's own witness at the defendants sentencing hearing.

There was therefore "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different, 'meaning' a probability sufficient to undermine confidence in the outcome."' **Eckstein v. Kingston,** 460 F.3d 844, 849 (7th Cir.2006) (quoting <u>Strickland v. Washington</u>, 466 U.S. at 694).

**10.** The defendant Liscano respectfully abandon the following claims presented in his 28 U.S.C. § 2255 **Motion:** Issues, One, Two, Three, Four, Six, Seven, Eight, Nine and Ten... Without any further argument on the matter.

**11.** For some reason the Government has chosen to argue that somehow Corral's sentencing testimony refutes Liscano's contentions that his sentencing testimony conflict with the Government's proof that Liscano was not Corral's personal little security man, among other things. For example, at **Page 3** of the Government's response, the Government contend that Corral's testimony that Liscano did not "work for" Corral **(id. at 29)**, that Liscano was not assisting Corral on a drug deal when Liscano called to warn Corral about police in the area **(id. at 30)**, that Corral had no agreement with Liscano for Liscano to help Corral sell drugs to other customers **(id. at 34)**, that Corral did not tell Liscano about Corral's other customers **(id. at 34)**, and that Corral's drugdealing operation could have continued without Liscano **(id. at 50)**. But none of Corral's testimony as claimed by the Government was inconsistent with the Government's proof. Liscano, respectfully disagree with this assessment of Corral's sentencing testimony by the Government. For example, the Government argued and this court along with the Seventh Circuit Court of Appeals

agreed that the connective tissue was infact the two phone calls made by Liscano to Corral.

As noted by the Seventh Circuit Court of Appeals, it was these very calls noted "for the hub and spoke conspiracy to function as a single unit, for otherwise the conspiracy is not one but many." **Bustamante, 493 F.3d at 885.**

The Government therefore cannot argue from a different stand point other than that argued at trial and on appeal, which was, Liscano was working for Juan Corral as his own little security man and that this was his role in the conspiracy, to protect those in it. Nor can the Government excape the fact that Liscano's appeal was affirmed on appeal based on this very same argument offered by the Government, that when Liscano made those phone calls to Corral, he was acting as the protector of Corral's drug conspiracy. Thereby, attempting to conceal the conspirators from being detected by police authority. See **T. Tr. at 1255.**

Thus, contrary to the Government's characterization, that Corral's sentencing testimony somehow refutes Liscano's contentions, "that Corral's testimony at sentencing, conflict with the Government's proof" is not supported by the record and therefore must fail.

12. Despite the Government's creative and colorful effort/argument to camouflage Corral's sentencing testimony with the Government's proof as one in the same, is telling, for the record tells a different story. For example, the Government claimed that Liscano agreed with Corral to sell drugs, but Corral's sentencing

testimony tells a different story(**id.** at 34).

13. In **United States v. Shi**, 317 F.3d 715, 717 (7th Cir.2003), this court held that standing alone, a simple buyer-seller relationship does not establish a conspiratoral agreement because each party acts "at arms-lenth, each trying to get the better deal, rather than cooperatively."

## CONCLUSION

**WHEREFORE,** had counsel ask the requested questions there was " a reasonable probability that, that proceeding would have been different, 'meaning' a probability sufficient to undermine confidence in the outcome."' **Eckstein v. Kington**, 460 F.3d 844, 849 (7th Cir.2006) (quoting **Strickland v. Washington**, 466 U.S. at 694).

Liscano therefore, respectfully request that this Court grant his petition in this matter for all of the reasons stated above.

Respectfully submitted,

/s/ *[signature]*
Steve Liscano
Reg. No. *14996-424*

USP Terre Haute
Post Office Box 33
Terre Haute, Indiana 47808

I, Steve Liscano, do hereby certify that a true an correct copy of the foregoing reply to the Government's response to defendant Liscano's 28 U.S.C. § 2255 Motion was sent to the following AUSA Barry Rand Elden, at 219 South Dearborn Street, 5th Floor, Chicago, Illinois 60604. On this 5TH day of February, 2010, via First -Class Mail.

Respectfully submitted,

/s/ Steve Liscano

Steve Liscano
Reg. No. 14996-424

USP Terre Haute
Post Office Box 33
Terre Haute, Indiana 47808